# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                              **No. 07-161**

**JARROW ALLEN**                                         **SECTION I**

## ORDER AND REASONS

Before the Court is a motion[1] to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by defendant, Jarrow Allen ("Allen"). For the following reasons, defendant's motion is **DENIED** and defendant's petition for post-conviction relief is **DISMISSED WITH PREJUDICE**.

## BACKGROUND

On July 12, 2007, Allen plead guilty to two counts of a seven-count indictment charging Allen with violations of 21 U.S.C. § 846, conspiracy to distribute and possession with intent to distribute 50 grams or more of cocaine base ("crack"), and 18 U.S.C. § 924(c)(1)(A), the possession of a firearm in furtherance of a drug trafficking crime.[2] At Allen's rearraignment, the government introduced into evidence a factual basis,[3] signed by Allen, stating that in 2007, Allen

---

[1]R. Doc. No. 57.

[2]R. Doc. No. 30.

[3]R. Doc. No. 37.

made three sales of crack cocaine to an undercover agent, Ricky Jackson ("Jackson").[4] The factual basis also stated that on May 3, 2007, DEA agents had observed Allen walking across the parking lot of his apartment complex with two companions, Herbert Allen and Charles Williams.[5] The agents approached the men and identified themselves as law enforcement agents. The agents arrested the three men and recovered approximately 14 grams of crack cocaine from Herbert Allen. Herbert Allen later stated that he had purchased the drugs from Allen.[6]

According to the factual basis, James Sewell ("Sewell") advised Allen of his rights, asked him if he wished to cooperate, and Allen agreed to speak to the agents.[7] Allen told the agents he lived in apartment 308 and the agents then walked Allen to his apartment and knocked on the door. Allen's girlfriend, Michelle Fred ("Fred"), opened the door and told the agents that the apartment was in her name and that she lived there with Allen. Fred agreed to allow the agents to search the apartment and signed a DEA consent to search form.[8] Allen told the agents that there was crack cocaine in the garbage bag in the kitchen and the agents recovered approximately 50 grams of crack cocaine from that location.[9] The factual basis also states that a firearm was found:

> Also seized during the search was a Hi-Point .40 caliber pistol, serial number 734807, located near the digital scales with cocaine residue on it, and a box of sandwich bags. Through their experience, DEA Agents are aware that firearms are typically used by drug dealers to protect their stash and/or cash proceeds from drug

---

[4]*Id*. at pp. 1-3.

[5]*Id*. at p. 3.

[6]*Id.*

[7]*Id*. at p. 4.

[8]*Id*.

[9]*Id.*

deals, and proximity between the firearm and drugs is largely indicative of such a purpose.[10]

Prior to entering his guilty plea, Allen executed a plea agreement wherein he agreed to plead guilty to counts 1 and 6 of the indictment and agreed to cooperate with law enforcement.[11] The government agreed that it would request that the Court dismiss counts 2, 3, 4, and 5 at the time of sentencing.[12] The government also agreed to inform the court, prior to sentencing, of any cooperation that Allen provided to law enforcement.[13] Additionally, Allen agreed to waive his right to appeal his sentence as set forth in the plea agreement:

> Except as otherwise provided in this paragraph, the defendant hereby expressly waives his rights to appeal from his conviction and/or his sentence, including but not limited to any appeal rights conferred by Title 28, United States Code, Sections 1291, and by Title 18, United States Code, Section 3742. The defendant further waives his right to contest his conviction and/or his sentence in any collateral proceeding, including proceedings brought under Title 28, United States Code, Section 2241 and Title 28, United States Code, Section 2255, on any ground, except that the defendant may bring a post conviction claim if the defendant establishes that ineffective assistance of counsel directly affected the validity of this waiver of appeal and collateral challenge rights or the validity of the guilty plea itself. Subject to the foregoing, the defendant reserves the right to bring a direct appeal of any sentencing imposed in excess of the statutory maximum.[14]

---

[10]*Id.*

[11]R. Doc. No. 36, p. 1.

[12]*Id.* Count 7 of the indictment charged Herbert Allen alone. *See* R. Doc. No. 10, p. 3.

[13]R. Doc. No. 36, p. 1.

[14]*Id.* at pp. 2-3.

On November 29, 2007, Allen was sentenced to the mandatory minimum sentence of 120 months as to count 1 and the mandatory minimum sentence of 60 months as to count 6, to be served consecutively.[15] Following the government's motion, the Court dismissed counts 2, 3, 4, and 5 of the indictment.[16] On January 16, 2008, because of Allen's substantial assistance to the government and pursuant to the government's recommendation, the Court reduced Allen's sentence as to count 1 from 120 months to 96 months, but it did not alter the 60 month sentence as to count 6.[17]

On August 14, 2008, Allen filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.[18] On June 22, 2009, the Court ordered that the defendant be appointed counsel[19] and on July 10, 2009, the Court determined that the defendant was entitled to an evidentiary hearing.[20] An evidentiary hearing was held on December 18, 2009.[21]

In his § 2255 motion, Allen contends that his trial lawyer was ineffective in advising him to plead guilty without first filing a motion to suppress alleging violations of the Fourth and Fifth Amendments of the U.S. Constitution. In addition, Allen claims that the factual basis for his

---

[15]R. Doc. No. 53.

[16]*Id.*

[17]R. Doc. Nos. 54, 55.

[18]R. Doc. No. 57.

[19]R. Doc. No. 76.

[20]R. Doc. No. 78.

[21]R. Doc. No. 120.

guilty plea to the 18 U.S.C. § 924(c)(1)(A) count was inadequate because it did not demonstrate that Allen possessed a firearm in furtherance of a drug trafficking crime.[22]

## LAW AND ANALYSIS

### I. Overview of § 2255

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255 (a). *See also Hill v. United States*, 368 U.S. 424, 426-27, 82 S. Ct. 468, 470, 7 L. Ed. 2d 417, 420 (1962). Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in an injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction." *United States v. Hayman*, 342 U.S. 205, 222, 72 S. Ct. 263, 274, 96 L. Ed. 232 (1952). The inquiry does not extend to the misapplication of sentencing guidelines. *See Williamson*, 183 F.3d at 462. In support of a § 2255 motion, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980).

---

[22] R. Doc. No. 93, pp. 1-2. In Allen's original § 2255 motion, Allen also claimed that his counsel provided ineffective assistance by failing to file a direct appeal. *See* R. Doc. No. 57, pp. 12-15. Allen's current court appointed counsel informed the court that, after she and Allen had an opportunity to discuss that claim, Allen decided not to pursue that claim. Therefore, the Court will not address it.

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (citing *Andrews v. United States,* 373 U.S. 334, 339, 83 S. Ct. 1236, 1238, 10 L. Ed. 2d 383 (1963)). Pursuant to § 2255, the Court must grant the defendant a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). If the court determines that the prisoner is entitled to relief "[it] shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**II. <u>Ineffective Assistance of Counsel</u>**

**a. <u>Standard for Ineffective Assistance of Counsel</u>**

The standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel that requires the petitioner to prove (1) deficient performance and (2) resulting prejudice. *Strickland*, 466 U.S. at 697. A defendant must satisfy both prongs of the *Strickland* test in order to be successful on an ineffective assistance claim. *See id.*

In order to satisfy the first *Strickland* prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the Court will

"indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal v. Puckett*, 286 F.3d 230, 236-37 (5th Cir. 2002). "[A] court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (citing *Strickland*, 466 U.S. at 689). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689.

The second prong of the *Strickland* test looks to the prejudice effected by counsel's deficient performance. This requires "a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 687). The defendant must show that counsel's errors were prejudicial and deprived defendant of a "fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden generally is met by showing that the outcome of the proceeding would have been different but for counsel's errors. *Id.* at 694.

In *Hill v. Lockhart*, the United States Supreme Court held that the two-part *Strickland* standard was applicable to challenges to guilty pleas based on ineffective assistance of counsel. 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). With respect to the prejudice

prong of *Strickland*, defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (quoting *Lockhart*, 474 U.S. at 59, 106 S. Ct. at 370).

### b. <u>Waiver of § 2255 Rights</u>

The Fifth Circuit has held that a defendant may waive his right to post-conviction relief pursuant to 28 U.S.C. § 2255 if the waiver was knowing and voluntary. *United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002)(citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)); *see also United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). For the waiver to be knowing and voluntary, the defendant must know that he had a right to seek collateral review and that he was giving up that right. *See United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994)(discussing waiver of appellate rights).

A claim of ineffective assistance of counsel may survive a waiver "when the claimed assistance directly affected the validity of that waiver or the plea itself." *White,* 307 F.3d at 343.[23] As long as the plea and the waiver themselves were knowing and voluntary and the contested issue is the proper subject of a waiver, "the guilty plea sustains the conviction and sentence and the waiver can be enforced." *White,* 307 F.3d at 343-44.

### c. <u>Fourth and Fifth Amendment Claims</u>

---

[23] Additionally, a waiver cannot be enforced to bar review of a sentence that exceeds the statutory maximum or where the defendant correctly contends that the indictment clearly does not state an offense or where the factual basis for the plea agreement does not show that the defendant committed an offense. *White*, 307 F.3d at 341, n.2; *United States v. Hollins*, 97 Fed. App'x 477, 479 (5th Cir. 2004).

In his § 2255 motion, Allen claims that his lawyer did not inform him that he could have filed a viable motion to suppress, but had his lawyer done so, Allen "would have insisted that counsel file such a motion before pleading guilty."[24] Although a habeas petitioner may not raise a Fourth Amendment claim on collateral review, *see U.S. v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008), because Allen asserts that his counsel's ineffective assistance, namely his failure to advise Allen to file a motion to suppress, directly affected the voluntary nature of the guilty plea, this claim survives Allen's waiver of his appellate rights. *White,* 307 F.3d at 343; *see also United States v. Thompson*, 44 F.3d 1004, 1995 WL 10514 at *4 (5th Cir. 1995);*United States v. James*, 2007 WL 2323385 at *7-8 (E.D. La. Aug. 10, 2007)(Vance, J.).

To establish that Allen's counsel rendered ineffective assistance of counsel under *Strickland*, Allen must first show that his counsel's performance fell below an objective standard of reasonableness. A lawyer's duty to investigate a potential Fourth Amendment issue requires reasonable investigation; it does not require lawyers to "scour the globe on the off chance that something will turn up." *Rompilla v. Beard*, 545 U.S. 374, 383, 125 S. Ct. 2456, 2463, 162 L.Ed. 2d 360 (2005).  In *Bryant v. Scott*, the Fifth Circuit observed that "the reasonableness of an attorney's investigation may critically depend on the information forwarded by the defendant and the defendant's own strategic decisions about his representation." 28 F.3d 1411, 1415 (5th Cir. 1994)(citing *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066)(stating that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable").

---

[24]R. Doc. No. 93, p. 6.

The testimony of Allen's trial counsel, Jason Williams ("Williams"), which the Court finds to be credible, contradicts Allen's assertion that his counsel never discussed the possibility of filing a motion to suppress. Williams testified that he and Allen discussed the possibility of filing a motion to suppress[25] and that he explained to Allen that if the motion to suppress were successful, the items discovered in the apartment search would be inadmissible.[26] In addition, Williams testified that Allen told him that Allen and Fred had both consented to the apartment search.[27]

Williams testified that, prior to his involvement in the case, Allen had begun to cooperate with the authorities.[28] Williams explained that based on his experience as a criminal defense attorney, filing a motion to suppress often foreclosed the possibility of further cooperation with the government.[29] [30] Williams testified that he and Allen weighed the possibility of filing a

---

[25]R. Doc. No. 121, p. 127.

[26]*Id.* at p. 129. Williams testified, "We spoke about the process of filing a motion to suppress. We spoke about what it would mean for the case. We spoke about . . . what would happen if it was suppressed, what would happen next. If he wanted to fight the case, if he wanted to go forward and go to trial. . . . We talked about . . . how good his chances were at a motion to suppress. I think, I remember a conversation about whether or not I thought he had a 50 percent chance, a 75 percent chance, and I told him I couldn't quantify it in percentages. I told him there were some legitimate issues. And I just could not tell him how the Court would rule. But I did explain that if it was suppressed, then this was no longer something he could be charged with." *Id.* at pp. 124, 129.

[27]*Id.* at pp. 123, 136, 142

[28]*Id.* at pp. 124, 126. On the night of Allen's arrest and prior to Williams' involvement, Allen cooperated with authorities by setting up drug deals that led to at least one arrest, according to Jackson's testimony. *Id.* at pp. 198-99

[29]*Id.* at pp. 126-27. Williams testified, "In my experience, the Government tends to close the door [on] that cooperation, when the facts of suppression are litigated, when that motion to suppress [is] filed. And I think it would have damaged or hurt the amount of substantial

motion to suppress against the possibility of further cooperation.[31] Williams stated that Allen was

very interested in cooperating and that he asked many questions about potential sentence

reductions in return for his providing substantial assistance. Williams also testified that he

believed that Allen was "somewhat in a better position"[32] to provide substantial assistance to the

government than many defendants because Allen began to cooperate before his arrest became

public.[33]

Williams testified that he and Allen fully discussed the possibility of filing a motion to

suppress, and that Allen chose to continue to assist the government in hopes of reducing his

sentence.[34] The Court finds that Allen cannot meet the first *Strickland* prong because his

attorney's decision not to file a motion to suppress was informed and reasonable. Moreover,

Allen's early and continued cooperation with the government undermines his testimony that he

would not have pled guilty had his counsel discussed the filing of a motion to suppress. Because

_____

assistance that the Government would have relayed to the Court, if we had gone forward with the motion to suppress. . . . [T]he calls that were made on behalf of Mr. Allen, on behalf of the government, to try to make new arrests in furtherance of any drug conspiracies would have stopped. *Id.*

[30]Such testimony was corroborated by Jackson's testimony. Jackson testified that had Allen filed a motion to suppress, any false statements he might have made at a suppression hearing would have precluded any further cooperation with the government. Jackson explained that such lies would have made any later statements by Allen suspect. In order to maintain the integrity of the investigation, the government would have ceased working with Allen. *Id.* at 201.

[31]*Id.*

[32]*Id.* at p. 126.

[33]*Id.*

[34]Jackson testified that Allen's cooperation lasted for a total of six months and that in his opinion, Allen had a "great relationship" with the police after his arrest. *Id.* at 202.

Allen must meet both prongs of *Strickland* to succeed on an ineffective assistance of counsel claim, his inability to meet the first prong mandates a denial of his claim. *See Strickland*, 466 U.S. at 697.

Additionally, the Court finds that Allen cannot meet the second prong of *Strickland* because he cannot show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different. 466 U.S. at 694. In guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts when reviewing ineffective assistance challenges to convictions obtained through trial. When an ineffective assistance of counsel claim is based on the defense counsel's failure to litigate a Fourth Amendment claim competently, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Ward v. Dretke*, 420 F.3d 479, 488 n.19 (5th Cir. 2005)(quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). The inquiry turns on whether a hypothetical motion to suppress would have been successful. *See United States v. Oakley,* 827 F.2d 1023, 1025 (5th Cir. 1987)). Defense counsel cannot be faulted for failing to raise a baseless objection. *Sones v. Hargett,* 61 F.3d 410, 415 n.5 (5th Cir. 1995)(holding that an attorney cannot be judged deficient for his failure to raise a frivolous issue).

Allen argues that his counsel failed to file a motion to suppress based on several alleged Fourth and Fifth Amendment violations. Namely, Allen contends (1) that the search of Allen's person in the parking lot was illegal; (2) that the apartment search was illegal because Allen expressly refused his consent to search; (3) that Fred did not voluntarily consent to the apartment

search; and (4) that Allen's disclosure of the locations of the drugs and the gun amounted to an involuntary confession. The Court will discuss each of the alleged violations in turn.

### I. The Parking Lot Arrest and Search

Allen contends that the search performed by police officers in the parking lot was illegal because the police lacked the requisite probable cause to search Allen for contraband. The government argues that the police officers had probable cause to stop and arrest Allen and that the subsequent search of Allen's person was lawful.

A warrantless arrest must be based on probable cause. *U.S. v. Ho,*94 F.3d 932, 935 (5th Cir. 1996)(internal citations omitted). The Fifth Circuit explained probable cause in *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*:

> "Probable cause exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed." *Bigford v. Taylor,* 834 F.2d 1213, 1218 (5th Cir.1988) (internal quotation marks omitted). Probable cause is determined on the basis of facts available to the officer at the time of the arrest . . . probable cause may be supported by the collective knowledge of law enforcement personnel who communicate with each other prior to the arrest. *United States v. Clark,* 559 F.2d 420, 424 (5th Cir. 1977). We must stress, however, that while law enforcement personnel "may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Bigford,* 834 F.2d at 1218.

330 F.3d 681, 688 (5th Cir. 2003).

Allen argues that the police lacked probable cause to arrest him because they had no reason to believe that he was engaged in criminal activity. Specifically, Allen argues that the police had no information that Allen trafficked drugs from his apartment.

The testimony at the evidentiary hearing demonstrates that the police had probable cause to arrest Allen. Jackson testified that Allen was a known drug dealer from whom, as an undercover agent, he had made three prior purchases of crack.[35] According to Jackson, the police were present at Allen's apartment building that morning for the dual purposes of conducting surveillance to aid their investigation and to effect an arrest of Allen based on his three prior crack sales.[36] Jackson's testimony is corroborated by Sewell's testimony. Sewell testified that the police were present at Allen's apartment that morning to conduct surveillance of Allen and that the "possibility of arresting him that day was there from the very beginning."[37] Moreover, the DEA-6 report, which Jackson completed after the incident, states that the police were conducting surveillance that morning "in an attempt to effect an arrest."[38] The police officers had probable cause to arrest Allen based on his three prior drug sales.[39]

The search of Allen's person in the parking lot was similarly lawful. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se*

---

[35]R. Doc. No. 121, pp. 183-84.

[36]*Id.* at p. 176.

[37]*Id.* at p. 169.

[38]R. Doc. 93, Def's Ex. 1. Although the name of the author of the DEA-6 report is blacked out, Jackson testified at the hearing that he completed the report.

[39]The Court also finds that, pursuant to this arrest, the police officers read Allen his *Miranda* rights and informed him that he was under arrest. Although Allen claims that he was never told that he was under arrest in the parking lot and that he was not informed of his rights, his testimony is contradicted by both Sewell and Jackson. Jackson testified that he personally informed Allen that he was under arrest, handcuffed Allen, and read Allen his rights. R. Doc. No. 121, pp. 178-79. Sewell testified that he approached Allen after Jackson had handcuffed him and that before he spoke to Allen, he also read him his rights. *Id.* at p. 152.

unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)(footnote omitted). One exception to the warrant requirement is a search incident to lawful arrest. *Ho,* 94 F.3d at 935. A search incident to arrest may include "the arrestee's person and the area 'within his immediate control' - construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California,* 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed.2d 685 (1969)). Because the search of Allen's person was performed incident to a lawful arrest, the search was lawful.

### ii. **Voluntary consent to search apartment: *Georgia v. Randolph***

Allen claims that his Fourth Amendment rights were violated when the police searched his apartment over his express refusal to consent to the search. "A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment." *United States v. Jones,* 239 F.3d 716, 719 (5th Cir. 2001)(citations omitted). The government bears the burden of proving that either exigent circumstances or consent justified a warrantless entry into the home. *Id.*

In *Georgia v. Randolph*, the U.S. Supreme Court held that an occupant's consent to the warrantless search of a residence is not valid as to a physically present co-occupant who expressly refuses consent. 547 U.S. 103, 122-23, 126 S.Ct. 1515, 1528 (2006). "[A] warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Randolph,* 547 U.S. at 120. In *Randolph,* the defendant unequivocally refused an officer's request for consent to search his home. *Id.* at 107. The officer then turned to the

defendant's estranged wife who consented to the search. *Id.* at 107. The Supreme Court held that evidence discovered as a result of the search should be suppressed because "a physically present co-occupant's stated refusal to permit entry prevails [over the other occupant's consent], rendering the warrantless search invalid as to him." *Id.* at 106.

Under *Randolph*, for the search to be invalid as to a co-tenant, the co-tenant must expressly refuse to give his consent to the search. *Id*. at 120; *see also United States v. Rushing*, 289 Fed. Appx. 785, 786 (5th Cir. 2008)("Because the district court found that Rushing did not refuse entry to the officers, *Randolph* is inapplicable to the instant case."); *United States v. McKerrel*, 491 F.3d 1221, 1227 (10th Cir. 2007)(holding that *Randolph* "required the defendant to have expressly objected to the search"); *United States v. Chavez*, 528 F.3d 546, 555 (8th Cir. 2008)("Loya's reliance on *Randolph* is misplaced because Loya has admitted that he did not expressly refuse consent.").

The Court does not find Allen's testimony that he refused consent to be credible. Allen contends that when Sewell said to him,"Let's go upstairs to your apartment," Allen said "No."[40] Sewell testified that, after he advised Allen of his Miranda rights, he informed Allen that this was a federal investigation and that the government knew that Allen had sold a significant quantity of crack cocaine to the government.[41] According to Sewell, he counseled Allen to "try to help yourself out now by cooperating with us."[42] Sewell stated that when he asked Allen if he wanted

---

[40]R. Doc. No. 121, p. 17.

[41]R. Doc. No. 121, p. 152.

[42] *Id*. at p. 153.

to cooperate with the government, Allen nodded his head to indicate his assent.[43] Sewell testified that he asked Allen if there were drugs in his apartment and Allen told him that there were not. Sewell testified that he replied, "Okay. Well, let's go up to that apartment. And let's see."[44] At that point, Allen, who had been leaning on the back of a car, cooperated by walking with the officers to the apartment.[45] Sewell testified that Allen never indicated any form of objection to the search of the apartment and that Sewell "considered him to be cooperating."[46] Moreover, Williams, Allen's attorney, testified that Allen told him that he had consented to the search of the apartment.[47] The Court finds that Allen did not expressly refuse consent to search the apartment.

### iii. Michelle Fred's voluntary consent

Allen argues that Michelle Fred did not consent to the apartment search. Alternatively, Allen argues that even if Fred did consent, her consent was not voluntary.

A warrantless entry into and search of a dwelling is presumptively unreasonable unless consent is given or probable cause and exigent circumstances justify the encroachment. *United States v. Jones,* 239 F.3d 716, 719 (5th Cir. 2001). In order to satisfy the consent exception, the government must prove, "by a preponderance of the evidence," that "consent to the search was freely and voluntarily given." *U.S. v. Solis,* 299 F.3d 420, 436 (5th Cir. 2002)(quoting *United States v. Gonzales,* 121 F.3d 928, 938 (5th Cir. 1997)). "The voluntariness of consent is a

---

[43]*Id.*

[44]*Id.*

[45]*Id.* at p. 154.

[46]*Id.*

[47]*Id.* at pp. 123, 136, 142.

question of fact to be determined from a totality of the circumstances." *Id.* (quoting *United States v. Cooper,* 43 F.3d 140, 144 (5th Cir. 1995)).

The court considers six factors when evaluating the voluntariness of consent to search, all of which are relevant, but none of which is dispositive or controlling. *Id.* (citing *United States v. Kelley,* 981 F.2d 1464, 1470 (5th Cir.1993)). Those six factors are:

(1) the voluntariness of the person's custodial status;
(2) the presence of coercive police procedures;
(3) the extent and level of the person's cooperation with the police;
(4) the person's awareness of his right to refuse to consent;
(5) the person's education and intelligence; and
(6) the person's belief that no incriminating evidence will be found.

*Id.* at 436, n. 21(citing *United States v. Olivier-Becerril,* 861 F.2d 424, 426 (5th Cir. 1988)).

Allen contends that Fred did not consent to the search. However, Allen stated in his original § 2255 motion that, "the officers asked his girlfriend [for her consent to search the apartment] and she gave them consent to enter the home."[48] In addition, the evidence presented at the evidentiary hearing supports a finding that Fred consented to the search. Williams testified that Allen told him that Fred consented to the search.[49] Fred testified that she did not remember giving her consent nor did she remember signing the consent to search form.[50] Fred admitted that she never told the officers that they could not search the apartment nor did she ask them to

---

[48]R. Doc. No. 57, p. 15.

[49]R. Doc. No. 121, p. 123.

[50]*Id.* at pp. 112-114.

leave.[51] She also testified that there was "a great probability" that the officers did ask for her consent and that "if they asked, then I agree, I probably did say yes."[52] At the hearing, Fred identified the signature on the consent to search form as being her signature. Sewell testified that he obtained Fred's consent before setting foot inside the apartment and before conducting an initial sweep of the apartment.[53] The Court finds Sewell's account credible and finds that Fred did consent to the search.

The next issue is whether Fred's consent was voluntary. Considering the first factor, i.e., the voluntariness of the person's custodial status, the Court finds that Fred was not in custody at the time.  As for the second factor, i.e., the presence of coercive police procedures, the Court observes that the absence of intimidation, threats, abuse, or other coercion weighs in favor of upholding what appears to be a voluntary consent. *U.S. v. Jones,* 475 F.2d 723 (5th Cir. 1973). Allen and Fred contend that the officers threatened to arrest Fred if she did not consent to the search. Sewell and Jackson testified that they did not issue any such threat, nor did they hear any other officers make similar comments.[54] To the contrary, Sewell testified that he had assured Fred that he did not believe she was involved in any illegal activity.  Allen also contends that the officers threatened to bring dogs into the apartment if Fred did not consent to the search. Again, the testimony at the hearing contradicts this assertion. Sewell testified that he did not threaten to

---

[51]*Id*. at pp. 112-13.

[52]*Id*. at p. 113.

[53]*Id.* at pp. 158-59.

[54]*Id.* at pp. 162, 217.

bring in dogs unless Fred consented to the search.[55] The Court finds the agents' testimony to be credible.

In assessing the presence of police coercion, a court may consider the number of agents present when consent was given. In this case, according to Sewell, a total of four plain clothes officers were present in the apartment, none of whom had their guns drawn when they arrived at the door. The Court does not find that this level of police presence is coercive. *See Solis,* 299 F.3d at 438 (holding that the presence of seven police officers, some in uniform, none with guns drawn at defendant's residence, did not render the defendant's consent involuntary).

As for the third factor, i.e., the extent of Fred's cooperation, Fred was, by Sewell's account, "very cooperative[,] [v]ery cordial[,] [v]ery nice," during the search.[56] After the police searched the apartment, Fred also consented to a search of her car.[57] The Court finds that Fred was cooperative throughout the search.

The Court turns next to the fourth factor, i.e., whether Fred knew that she could refuse consent. Sewell testified that although he did not specifically advise her that she could refuse consent, he did explain to her that she did not have to sign the consent to search form and that Fred chose to sign the consent to search form with the understanding that she did not have to sign it.[58] "[W]hile knowledge of the right to refuse consent is one factor in determining voluntariness,

---

[55]R. Doc. No. 121, p. 162.

[56]R. Doc. No. 121, p. 164.

[57]*Id.* at p. 94.

[58]*Id.* at pp. 162-63.

the failure to advise an individual of the right to withhold consent is not determinative in and of itself." *Solis*, 299 F.3d at 438 (quoting *United States v. Gonzales*, 121 F.3d 928, 939 (5th Cir. 1997)).

With respect to the fifth factor, i.e., Fred's education and intelligence, Fred attended high school through 12th grade and she has some college education. She has worked as a security manager for the last eight years. The Court finds that Fred's level of intelligence and education enabled her to understand what the agents said to her and to knowingly and intelligently give her consent to search.

As for the sixth factor, i.e., the person's belief that no incriminating evidence will be found, the Court finds that Fred was aware that some incriminating evidence could be found in the apartment. "[K]nowledge that incriminating evidence would be found does not necessarily weigh against a finding of voluntary consent." *Solis*, 299 F.3d at 438; *see also United States v. Tompkins*, 130 F.3d 117, 122 (5th Cir. 1997)("[I]nasmuch as Tompkins knew that some inculpatory evidence was already in the possession of police, he might have consented [to the search even though he knew incriminating evidence would be found] in the hope that his cooperation would result in more favorable treatment.").

According to Sewell, a scale covered with cocaine residue and sandwich bags were on the kitchen counter and in plain sight. Although at the hearing Fred testified that she had never seen the scale before, the Court finds such testimony not to be credible. The drugs were found in the garbage can, underneath the plastic garbage bag.[59] Allen testified that he kept the drugs in that

---

[59]*Id.* at pp. 25-26.

location.[60] Fred testified at the hearing that she and Allen share the task of emptying the garbage can and replacing the garbage bag.[61] The Court finds that Allen would not have kept the scale and baggies in plain sight and the drugs in the garbage can, where Fred could easily discover them, if Fred was not already aware that he was engaged in drug trafficking. The Court observes that it is likely that Fred consented to the search because Allen, the owner of the drugs, was already cooperating with the police. Given the totality of the circumstances, the Court finds that Fred's consent was voluntary and that the police officers lawfully entered and searched the apartment.

### iv. <u>Consent following an illegal entry into the apartment</u>

Allen argues that because the police illegally entered the apartment, the evidence recovered from his apartment should have been suppressed. Under the fruit-of-the-poisonous tree doctrine, "all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of a Fourth Amendment violation." *United States v. Rivas,* 157 F.3d 364, 368 (5th Cir. 1998). Because the Court finds that lawful consent was obtained before the agents entered the apartment, the Court finds that the police legally entered the apartment, searched the apartment, and made lawful seizures.

### d. <u>Fifth Amendment Claim: Confession of drug and gun locations</u>

The defendant argues that Allen's confession as to the locations of the drugs and the gun was obtained by inherently coercive police tactics and should have been suppressed. Specifically,

---

[60]*Id*. at p. 26.

[61]*Id.* at p. 114.

Allen argues that he confessed to the locations of the gun and the drugs in his apartment because the police threatened to arrest Fred. Allen relies on *United States v. Finch*, a Sixth Circuit case in which police entered a house pursuant to a search warrant. 998 F.2d 349 (6th Cir. 1993). In *Finch*, there were three occupants in the house – the defendant, his mother, and his girlfriend – and the police threatened to arrest all three occupants unless one person admitted sole ownership of any cocaine found. *Id.* at 355. Faced with such threat, the defendant directed the officers to the cocaine. The Sixth Circuit held that "threats to arrest members of a suspect's family may cause a confession to be involuntary" and found that the defendant's confession was in fact involuntary and in violation of his privilege against self incrimination. *Id.* at 356.

Unlike the defendant in *Finch*, prior to the police search, Allen was advised of his *Miranda* rights, by both Sewell and Jackson. The *Miranda* safeguards "are most commonly satisfied by giving the defendant the customary *Miranda* warnings: That he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that an attorney will be provided for him if he cannot afford to hire one." *United States v. Cardenas*, 410 F.3d 287, 292 (5th Cir. 2005) (quoting *United States v. Andrews*, 22 F.3d 1328, 1337 (5th Cir. 1994)). After adequate warnings have been given, a suspect can knowingly and intelligently waive his *Miranda* rights and agree to answer questions. *Id*. However, "[a] defendant's waiver of his *Miranda* rights is effective only if voluntary." *Id.* The waiver must have been "voluntary in the sense that it was the product of a free and deliberate choice rather than . . . deception . . . [and] the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 293.

The Court finds that Allen's waiver was not the product of coercion because the police never threatened to arrest Fred. Allen's testimony to the contrary is not credible. As discussed previously, Sewell and Jackson testified that they did not threaten Fred, nor did they hear any other officer threaten Fred. Allen likely told the police where the drugs were because he had already made the decision to cooperate with the police. Allen's waiver was not coerced; it was the product of a free and deliberate choice. Additionally, Allen was fully informed of the nature of the right he was waiving, having been appraised of his *Miranda* rights. The Court finds that Allen's waiver was voluntary and knowing.

Because Allen cannot show that a motion to suppress would have succeeded, he cannot satisfy the prejudice prong of *Strickland.* Having considered the law and the facts of this case, the Court finds that Allen is unable to prove that his counsel rendered ineffective assistance of counsel because he cannot meet both *Strickland* prongs.

### III. <u>Factual Basis Challenge</u>

Allen argues that the Court violated Rule 11(b)(3) of the Federal Rules of Criminal Procedure when it accepted his guilty plea because the factual basis on the record was insufficient to support his plea to the 18 U.S.C. § 924(c)(1)(A) charge.[62]

#### a. <u>Rule 11(b)(3) of the Federal Rules of Criminal Procedure</u>

A guilty plea is insufficient in itself to support a criminal conviction. *United States v. Adams,* 951 F.2d 505, 508 (5th Cir. 1992). When a defendant enters a guilty plea, Rule 11(b)(3)

of the Federal Rules of Criminal Procedure requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim Pro. 11(b)(3).

"The factual basis, whatever its source, must appear clearly on the record," *Sassoon v. United States of America*, 561 F.2d 1154, 1159 (5th Cir. 1977), and "'must be precise enough and sufficiently specific' to demonstrate that the accused committed the charged criminal offense." *Adams,* 951 F.2d at 508 (quoting *United States v. Johnson*, 546 F.2d 1225, 1226 (5th Cir. 1977)). "The record must reveal specific factual allegations supporting each element of the offense." *Id.*[63]

Allen raises the Rule 11(3)(b) issue for the first time on collateral review and because the government has raised the defense of a procedural bar,[64] Allen must show "both 'cause' for his procedural default and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)(citing *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982)). "The effect of [a] procedural bar is to preclude a defendant from attacking his conviction or sentence on collateral review. It can arise where a defendant had the opportunity to raise contested issues in a direct appeal but failed to do so." *Guerra v. United States of America*, 94 F.3d 989, 993 (5th Cir. 1996). "This cause and prejudice standard presents 'a significantly higher hurdle' than the 'plain error' standard [courts] apply on direct appeal." *Shaid*, 937 F.2d at 232 (citing *Frady*, 456 U.S. at 168).

---

[63]"If sufficiently specific, an indictment or information can be used as the sole source of the factual basis for a guilty plea." *Adams,* 951 F.2d at 509.

[64]To invoke the procedural bar, the government must raise such defense in the district court. *Guerra v. United States of America*, 94 F.3d 989, 993 (5th Cir. 1996). The government did so in a supplemental memorandum filed on February 23, 2010. R. Doc. No. 136.

**b. <u>18 U.S.C. § 924(c)(1)(A)</u>**

Allen argues that the factual basis is inadequate because it does not show that the gun recovered from his apartment was used in furtherance of a drug trafficking crime.[65] A firearm is possessed in furtherance of a drug trafficking offense if the firearm "furthers, advances, or helps forward the drug trafficking crime." *U.S. v. Ceballos-Torres,* 218 F.3d 409, 415 (5th Cir. 2000). In *Ceballos-Torres*, the Fifth Circuit listed factors that would help determine whether a particular defendant's possession of a firearm furthers, advances, or helps forward a drug trafficking offense:

(1) the type of drug activity that is being conducted;

(2) the accessibility of the firearm;

(3) the type of the weapon;

(4) whether the weapon is stolen;

(5) the status of the possession (legitimate or illegal);

(6) whether the gun is loaded;

(7) proximity to drugs or drug profits; and

(8) the time and circumstances under which the gun is found.

*Id.* at 414-415. The Fifth Circuit explained that the "mere presence" of a firearm at the scene is not enough. *Id.* at 414 (quoting H.R. Rep. No. 105-344 at 11 (1997)). "The mere presence test is one based on generality – anytime a drug dealer possesses a gun, that possession is in furtherance, because drug dealers generally use guns to protect themselves and their drugs." *Id.* Instead, the

---

[65] 18 U.S.C. § 924(c)(1)(A), in relevant part, makes it a crime for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . in furtherance of any such crime, possesses a firearm . . ." 18 U.S.C. § 924(c)(1)(A).

government must present evidence "specific to the particular defendant showing that his or her possession actually furthered the drug trafficking offense." *Id.*

**c. The Factual Basis**

The first question is whether the factual basis that the government entered into the record at Allen's rearraignment sets forth sufficient facts to sustain his conviction for possession of a gun in furtherance of drug trafficking. The factual basis states:

> Also seized during the search was a Hi-Point .40 caliber pistol, serial number 734807, located near the digital scales with cocaine residue on it, and a box of sandwich bags. Through their experience, DEA Agents are aware that firearms are typically used by drug dealers to protect their stash and/or cash proceeds from drug deals, and proximity between the firearm and drugs is largely indicative of such a purpose.[66]

The Court finds that the factual basis, by itself, is insufficient to show that the defendant possessed a firearm in furtherance of a drug trafficking crime. Although the factual basis states that the gun was found "near" a scale with cocaine residue on it and a box of plastic sandwich bags, the factual basis does not set forth specific facts that connect the firearm to Allen's drug trafficking activities. For example, the factual basis lacks any reference to the accessibility of the firearm, the proximity of the firearm to the drugs found in the apartment, or whether the firearm was loaded. *See Ceballos-Torres,* 218 F.3d at 414-415; *United States v. Zavala*, 286 Fed. Appx., 170, 176 (5th Cir. 2008). Moreover, the generalization that "firearms are typically used by drug dealers to protect their stash and/or cash proceeds from drug deals, and proximity between the firearm and drugs is largely indicative of such a purpose" does not meet the *Ceballos-Torres*

---

[66]R. Doc. No. 37.

requirement that the government must present specific evidence that Allen's possession of the firearm actually furthered a drug trafficking offense. 218 F.3d at 414. The Court finds that the factual basis, by itself, does not show that Allen violated § 924(c)(1)(A).

### d. <u>Cause and Prejudice</u>

The government argues that because Allen cannot show both cause and actual prejudice, he cannot overcome the procedural bar raised on collateral review. *Shaid*, 937 F.2d at 232. To meet the cause requirement, Allen must show that "some objective factor external to the defense prevented him from raising on direct appeal the claim he now advances." *Guerra*, 94 F.3d at 994 (internal citations and quotations omitted). "Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense." *Id.*

In addition to showing cause, Allen must show actual prejudice to overcome the procedural bar. *Shaid*, 937 F.2d at 232. "The movant makes this showing where he demonstrates that, but for the error, he might not have been convicted." *Guerra*, 94 F.3d at 994. To prove "actual prejudice" in the context of a guilty plea, a defendant must show "that absent the error by the district court he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 994.

As to the prejudice prong, Allen argues that he was prejudiced by his counsel's failure to advise him that the factual basis was insufficient and that, had his counsel advised him of such, he

would have insisted on going to trial.[67] The Court finds that the defendant was not prejudiced by the deficient nature of the factual basis because substantial evidence adduced at the evidentiary hearing supports the defendant's § 924(c)(1)(A) conviction. First, the record at the evidentiary hearing establishes that the firearm was loaded and ready to be fired.[68] In addition, Allen had conducted a drug deal in his apartment on the morning that he was arrested. Although Allen contends that because Herbert Allen was his cousin and Charles Williams was his mechanic, a gun would not be necessary during the May 3, 2007 sale, the Court observes that it has no way of knowing whether this particular sale was the only sale Allen conducted from his apartment that morning or whether other sales were planned. The Court notes that there is evidence that Allen trafficked in drugs on several other occasions.

In addition, the Court finds that the gun was in close proximity to Allen's drugs and drug paraphernalia, an important element of the *Ceballos Torres* test.[69] The scale, covered in what appeared to be cocaine residue, was found in plain view on the kitchen counter,[70] and the drugs were found in the garbage can in the kitchen. The record at the evidentiary hearing establishes

---

[67]R. Doc. No. 139, p. 3.

[68]R. Doc. No. 212, p. 193.

[69] *See United States v. Charles*, 469 F.3d 402, 406 (5th Cir. 2006); *United States v. London,* 568 F.3d 553, 559 (5th Cir. 2009).

[70]Although Fred testified that she had never seen the digital scale in the kitchen, R. Doc. No. 121, pp. 87, 90, the Court does not find such testimony credible. Sewell, in testimony that the Court does find credible, testified that he saw the scale on the kitchen counter and that he was the first person to see the scale. R. Doc. No. 121, p. 174 (Sewell testified, "[The scale] was not far from the refrigerator, sitting on the kitchen counter, a little bit of residue on it, and baggies next to it. . . . I was the first one to see it.").

that the gun was found in the bedroom, under a pillow on the bed.[71] Jackson testified that the gun was in close proximity to the drugs in the kitchen because the apartment was small and the bedroom was not more than five to ten steps from the kitchen. Jackson testified that, "if you're running to the back [of the apartment], it would take you anywhere from 3 to 5 seconds. If you're walking, you're looking at 5 to 10, if that."[72]

With respect to the proximity of the firearm, the defendant argues that he should not be penalized for living in a small apartment. The simple answer to such an argument is that defendant is not being penalized for living in a small apartment.

Notwithstanding the fact that this was a small apartment, there is a great deal of evidence supporting the fact that the gun would have also been readily *accessible* to Allen as he distributed drugs in the kitchen. The gun was not stored in a locked box or closet. Although Fred testified that Allen always kept his gun either on a nightstand or in the bedroom closet,[73] the gun was lying on the bed when the agents found it, covered only by a pillow. The fact that the gun was not in the locations where Allen usually stored it creates an inference that Allen moved the gun so that it

---

[71]At the evidentiary hearing, Jackson testified that Allen informed him that he had a gun in the back room of the apartment. R. Doc. No. 121, pp. 191-92. During the agents' initial search of the bedroom, they could not find the gun. Jackson testified that at that time, "I asked [Allen] again [where the gun was], [Allen] said, 'It's under the pillow, if you're facing the bed, to the right of the bed under the pillow, that's where the gun is located.'" *Id*. at 192. Jackson testified that, "Once I told [the other agents] that it was under the pillow, they said they had it. They found it. Their exact words were, 'I got it.'" *Id.*

[72]R. Doc. No. 121, p. 195.

[73]R. Doc. No. 121, pp. 88-89. Fred testified that she had never known Allen to place the gun underneath the pillow in the bedroom. *Id.* at p. 90.

would be more accessible during the drug deal. Considering the *Ceballos-Torres* factors, the Court finds that the evidence at the evidentiary hearing supports Allen's guilty plea to the 18 U.S.C. § 924(c)(1)(A) charge.

Allen argues that had he known that the government's evidence as to the § 924(c)(1)(A) charge was "weak" he would not have pled guilty.[74] As described above, the government's evidence would have sustained Allen's conviction at trial. In light of Allen's early and ongoing cooperation with the government prior to his guilty plea and the government's offer, in exchange for Allen's guilty plea, to advise the Court of his substantial cooperation and request a dismissal of counts 2, 3, 4, and 5 of the indictment at sentencing, the Court does not find credible the defendant's assertion that had he known that the factual basis did not comply with Rule 11(b)(3), he would not have pled guilty with respect to the gun count. Because the Court does not find that the defendant suffered actual prejudice, it need not consider whether the defendant can show cause.

## IV. CONCLUSION

**IT IS ORDERED** that the motion to vacate sentence and conviction pursuant to 28 U.S.C. § 2255 filed by defendant, Jarrow Allen, is **DENIED** and that Allen's petition for post-conviction relief is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, March 30, 2010.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[74]R. Doc. No. 139, p. 3; *see also* R. Doc. No. 121, p. 31.